**TRACOR, INC., Appellant,**

v.

**AUSTIN SUPPLY & DRYWALL
CO., INC., Appellee.**

No. 11940.

Court of Civil Appeals of Texas,
Austin.

July 26, 1972.

Rehearing Denied Sept. 13, 1972.

Harry S. Pollard, Austin, for appellant.

Baker, Watkins, Ledbetter, Hayden & Ramsey, Thomas H. Watkins, Austin, for appellee.

SHANNON, Justice.

Appellee, Austin Supply & Drywall Co., Inc., sued appellant, Tracor, Inc., in the district court of Travis County concerning a sale of goods. Upon trial to the court, judgment for $1,678.87, including attorney's fees, was entered in favor of appellee. We will affirm that judgment.

The subject of the appeal centers about the order by appellant from appellee of a quantity of a gypsum product commonly known as, "sheetrock." [1] Appellant's employee, Glen Perrin, telephoned David Steinbach, to inquire of the availability of 10,000 square feet of "one inch" sheetrock. Steinbach, though employed by National Gypsum Company as a sales representative, apparently acted as the agent of appellee in this instance. Although Perrin emphasized more than once that he needed "one inch" material, he did not tell Steinbach of his employer's intended use of the sheetrock. After Steinbach assured Perrin of the availability of the material and its price, Perrin sent appellee a purchase order for "one inch" sheetrock. When the sheetrock was delivered to appellant it was rejected by Perrin because it was not the type which he had "in mind."

Appellant required that appellee remove the sheetrock, and for a period of time appellee stored it in a warehouse, but later placed it outside when storage space was needed. As a result, it deteriorated greatly.

The reason for the rejection of the sheetrock was that appellant's particular project required homogeneous sheetrock rather than the laminated type delivered.

Steinbach did not inquire of Perrin whether he needed homogeneous or laminated sheetrock. The evidence was that laminated sheetrock was the type commonly used in this area, and only rarely did appellee receive a request for the homogeneous type.

The court filed findings of fact and conclusions of law and found, among other things, that the sheetrock delivered was of fair, average quality and fit the ordinary purposes for which it is used, and it fit within the description of the sheetrock ordered by appellant. The court concluded in part that the purchase order issued by appellant and accepted by appellee was a contract for the purchase and sale of goods by description, and that the sheetrock delivered conformed to the description created by appellant. The court was further of the opinion that the sheetrock delivered to appellant met all the implied and expressed warranties created by the contract.

Appellant's main contention is that there was no contract of purchase and sale because there was "no meeting of the minds of the parties." This was so, appellant argues, because there was a latent ambiguity as to appellant in the use of the terms of "one inch" sheetrock while there was a patent ambiguity as to appellee, since appellee knew of the two types of "one inch" sheetrock. It follows from a statement of its position that appellant argues that the terms of the Texas Business and Commerce Code, V.T.C.A.,[2] are not applicable to the involved sale.

An examination of the findings of fact and conclusions of law shows that the trial court considered, and we think correctly, that the case was governed by the terms of the Code since the transaction between appellee and appellant was a contract of purchase and sale of goods. See Section 2.-106(a).

---

1. The term, "sheetrock," is a trade name. The same material is called variously "coreboard," and "gypsum board." However, because of its familiarity the term, "sheetrock" will be used in this opinion.

2. Sometimes referred to in this opinion as the "Code."

As the sale was one by description, the appellee, as seller and plaintiff, must demonstrate that it discharged the express and implied warranties imposed by the Code. With reference to express warranties created by sale by description Section 2.-313(a) of the Code provides in part as follows:

(a) "Express warranties by the seller are created as follows:

. . . . . .

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

The description specified by appellant was "one inch" sheetrock. Since appellant did not specify whether it wished the homogeneous or laminated type, either would comply with express warranty imposed by that description.

Since appellee is a "merchant," the Code imposes certain implied warranties in Section 2.314:

"(a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as

(1) pass without objection in the trade under the contract description; and

(2) in the case of fungible goods, are of fair average quality within the description; and

(3) are fit for the ordinary purposes for which such goods are used; and

(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any."

The record shows that appellee met those implied warranties imposed by Section 2.314. Appellant admitted in its answers to appellee's request for admissions that sheetrock is manufactured in sheets of homogeneous gypsum and sometimes such are laminated, and both the homogeneous and laminated types of sheetrock are standard products among gypsum manufacturers. Appellant admitted further that the sheetrock delivered was of fair average quality and was fit for the ordinary purposes for which it is used. Appellant also admitted that sheetrock is used for partitioning, and that the sheetrock delivered was of even kind, quality, and quantity within each unit and among all units involved.

The problem in this case does not concern any latent or patent ambiguity in what was purchased, but rather it concerns the particular purpose for which the sheetrock was intended by the appellant buyer. In those situations wherein the seller knows the particular purpose intended for his goods and that the buyer is relying on his skill or judgment in selecting or furnishing suitable goods, then an implied warranty that the goods shall be fit for that purpose is imposed by Section 2.315 of the Code. Appellant did not inform appellee of the particular purpose intended for the sheetrock, and consequently, the implied warranty of fitness for a particular purpose did not arise.

Appellant's next group of points claim that the court erred in finding that under the circumstances appellee exercised reasonable care for sheetrock after its removal from appellant's premises. Appel-

lant complains further in this connection that the court erred in concluding that the title to the sheetrock was in appellant and that appellant had no duty to care for the sheetrock.

Section 2.709(a)(2) of the Code defines in part the rights and obligations of the seller after the buyer fails to pay. The seller may recover the price of goods if, after reasonable effort, he is unable to resell them or if the circumstances reasonably indicate that such effort would be unavailing.

An examination of the statement of facts shows that the sheetrock had been cut in an irregular size at appellant's order, and was not marketable. Although the court's findings do not mesh entirely with the requirements of Section 2.-709(a)(2) of the Code, we are of the opinion that there is a sufficient showing that appellee discharged his responsibility under Section 2.709(a)(2).

■ By a further point of error appellant claims that the court erred in entering judgment on appellee's account for $928.87 because of a claimed variance between the cause of action pleaded and that proved. In its petition appellee pleaded that it had sold certain goods to appellant and that the balance due and still owing was $928.87. Without objection appellee was permitted to prove a sale of the sheetrock in the sum of $1,100.00. The court, however, limited the amount of recovery to the amount pleaded, $928.87. By so conforming the recovery to the amount pleaded the court did not commit error, but rather avoided error.

■ Appellant complains by its final point of error of the court's refusal to admit certain evidence. The evidence rejected was a document purporting to be a Georgia-Pacific Building Products Catalog for 1971 offered for the purpose of showing its description of "one inch" coreboard (sheetrock). Appellant's counsel asked David Steinbach, an employee of National Gypsum Company, if he knew whether or not Georgia-Pacific was one of the major manufacturers, or a large manufacturer of gypsum products. Steinbach replied that he knew that Georgia-Pacific was a manufacturer of gypsum but that he was not familiar with their "one inch" coreboard (sheetrock). Without more, appellant offered the document into evidence. Under this state of the record the catalogue was properly excluded as hearsay. McCormick and Ray, Texas Law of Evidence, Vol. I, § 790, p. 574.

Affirmed.

PHILLIPS, C. J., not sitting.