**R. B. WILLOUGHBY et al., Appellants,**

**v.**

**CIBA–GEIGY CORPORATION et al., Appellees.**

**No. 8344.**

Court of Civil Appeals of Texas, Beaumont.

Dec. 27, 1979.

Rehearing Denied Feb. 7, 1980.

---

Petry & Petry, Carrizo Springs, for appellants.

Butler, Binion, Rice, Cook & Knapp, Houston, Crawford, Crawford & Hughes, Uvalde, for appellees.

CLAYTON, Justice.

Appellants, R. B. Willoughby, individually, and R. B. Willoughby and R. B. Willoughby, Jr., d/b/a R. B. Willoughby and Son, filed this suit against appellees, Ciba-Geigy Corporation (Geigy), Agricultural Supplies of Batesville, Inc. (Ag Supplies), and M. L. Coleman, seeking damages resulting from the use and application of a certain herbicide, Evik, to appellants' 1974 corn crop. Appellants alleged separate causes of action against all appellees under the theory of strict liability, gross negligence, fraud and deceit, deceptive trade practices, and breach of implied warranties. Appellants' basic complaint was that the yield of their 1974 corn crop was diminished due to the application of Evik, a post-emergence herbicide manufactured by Geigy and sold to appellants by Ag Supplies through Coleman, an employee of Ag Supplies. Trial was to a jury.

The trial court granted a motion for instructed verdict against appellants on the cause of action as to gross negligence, fraud and deceit, deceptive trade practices, and breach of implied warranties. Special issues were submitted to the jury upon the strict liability cause of action. All issues were answered favorably to appellees, and, based upon the verdict, a take nothing judgment was entered. No complaint has been made as to the instructed verdict in favor of Coleman, and appellants have abandoned their appeal as to him.

■ Appellants' first point complains of error in instructing a verdict against them on their cause of action for breach of implied warranties. This being an appeal from an instructed verdict, we must accept as true the evidence supporting appellants' allegations. All conflicts and inconsistencies must be resolved in favor of appellants, and we must draw all inferences therefrom most favorable to their alleged cause of action. *Constant v. Howe*, 436 S.W.2d 115 (Tex.1968); *Hart v. Van Zant*, 399 S.W.2d 791 (Tex.1965).

The record before us shows, in considering the evidence in the light most favorable to appellants, that Geigy manufactured the product Evik and that it was sold for the purpose of killing and controlling weeds found among growing corn plants. The product, Evik, was sold to Ag Supplies, and the product was then sold to its customers.

Coleman, manager of Ag Supplies' plant in Batesville, had discussed with appellant Willoughby, Jr., the condition of appellants' corn field with reference to the weeds, seedlings, and Johnson grass growing within appellants' corn field. Coleman had made recommendations during the preceding eight to ten years as to the type of products to use on their field, and appellants had always relied upon his recommendations. On this particular occasion, Coleman recommended the use of Evik for the grass and weed problems, and appellants relied upon this recommendation. This discussion occurred in the month of May 1974. Coleman had visited appellants' farm and knew of the conditions of this corn crop before making his recommendation. Appellant Willoughby, Jr., did not purchase the Evik and take the product in his possession. There is no evidence that he ever saw the package container of the product. He merely requested the use of a product to solve his weed and grass problems.

Coleman recommended Evik, and Coleman applied the product to appellants' corn crop. There is no evidence that the product was improperly applied, except as to the timely application of same. Coleman applied the Evik to approximately six hundred acres of appellants' 1974 corn crop between May 15 and May 20, 1974. He had seen literature furnished by Geigy, and such literature contained no instructions or warnings with reference to spraying Evik within three weeks prior to tasseling. Coleman testified it was in 1976 that he, for the first time, received a bag of Evik from Geigy with the warning, "Do not apply within three weeks of tasseling of corn." Coleman applied the Evik to appellants' corn crop at a time when some of the corn was tasseling, inferring that some was not tasseling. He further testified that at the time of spraying the Evik, the corn crop was normal with the exception of the weeds and grass.

Within a week or ten days after the Evik was sprayed, appellants observed problems with the corn. The leaves were burned, and the corn "was starting to deteriorate on the ends in places." This was reported to Coleman who in turn reported it to a representative of Geigy. Willoughby, Jr., testified he had some acreage planted with corn which was sprayed with herbicides other than Evik. One such acreage yielded 72.8 bushels per acre. Another acreage yielded 102 bushels per acre. On the acreage sprayed with Evik, the yield was approximately twenty-five bushels per acre. Some of the corn sprayed with Evik was defective in that some of the ears were small, curved, and void on one side, and some ears appeared "where there would be sufficient shuck but you would open it up and there would be a cob the size of your finger."

Willoughby, Jr., testified that prior to spraying the Evik in May 1974, he attended a meeting sponsored in part by Geigy. At this meeting, he came into possession of a pamphlet prepared by Geigy. There was nothing in this pamphlet warning that Evik should not be applied to corn after it had been planted for six or seven weeks or shouldn't be applied within three weeks before tasseling. This meeting was held in the early part of 1974 and prior to the time of the application of Evik to appellants' corn crop.

Dr. Cowett, director of technical sales service of Geigy, testified his department sent a memo to all of "our field personnel of [Geigy]" that "recent field and laboratory results have indicated that late applications of [Evik] on corn may affect yield. . . . Our experience in 1973 and recent experimental results indicate that Evik should be applied no later than six to seven weeks after corn planting, and in any event, no later than twenty-one days prior to tasseling." He admitted that Geigy received ten to twenty reports in 1973 where growers had complained of the yield reduction from using Evik. As a result of tests made in the winter of 1973–74, it was recommended that Evik not be applied "closer than twenty-one days prior to pollination." Their tests and recommendations were made prior to the application of Evik to appellants' crop. This information was not at any time given or received by appellants prior to the application of the product to their corn crop. The testimony further shows that Evik will kill corn if improperly applied, and it "would make it dangerous to the growth of the corn."

Dr. Bruce Perry testified that Evik caused the damage to appellants' corn crop. He stated the damage was caused by the "chemical" in the Evik, and the "Evik caused the damage."

■ There is an implied warranty as to merchantability and fitness for the use to which it was intended, i. e., killing or controlling weeds and grass growing among corn plants without producing damage or injury to the corn plants. Tex.Bus. & Com. Code Ann. § 2.315 (Vernon 1968); *Mid Continent Aircraft v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 311 (Tex. 1978); *Ford Motor Co. v. Tidwell*, 563 S.W.2d 831 (Tex.Civ.App.—El Paso 1978, writ ref'd n. r. e.); *Chaq Oil Company v. Gardner Machinery Corporation*, 500 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Tracor, Inc. v. Austin Supply & Drywall Co., Inc.*, 484 S.W.2d 446 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.).

Appellees argue there can be no liability on breach of implied warranty because Geigy had printed on the side of the container of Evik a disclaimer of warranty as provided by *Tex.Bus. & Com.Code Ann. § 2.316(b)* (Vernon 1968).

■ The evidence in this case clearly shows the disclaimer of warranty was never disclosed or brought to the attention of appellants, who had not, at any time, come into possession of the container. Appellants did not see the disclaimer; the container upon which the disclaimer appeared was never in their possession, and it was not called to their attention by Coleman. Under these circumstances, we hold the disclaimer relied upon by appellees was ineffective to relieve appellees of liability. See Weintraub, "Disclaimer of Warranties and

Limitation of Damages for Breach of Warranty Under the UCC," 53 Texas L.Rev. 60, 69 (1975); *Longino v. Thompson*, 209 S.W. 202 (Tex.Civ.App.—San Antonio 1919, writ ref'd); *Sugarland Industries, Inc. v. Falco*, 360 S.W.2d 806 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.).

■ The evidence, when viewed by the appropriate standard, raises an issue of fact as to implied warranty, breach thereof, and causation, and this cause of action based upon implied warranty should have been submitted to the jury. The trial court erroneously instructed a verdict as to this cause of action. This point is sustained.

Appellants, in their 5th, 6th, 7th, 8th, 9th, and 10th points of error complain that the answers of the jury to certain special issues were contrary to the overwhelming weight and preponderance of the evidence. All of the issues basically called for a finding that a danger was presented to corn by the application of Evik when the corn was silking and tasseling and, further, that the appellees failed to adequately warn appellants of such danger. The jury answered each issue adversely to appellants.

■ We have carefully reviewed the evidence, and it is clear that the testimony as to the danger created by the use of the herbicide during such period of time is conflicting. Where there is any conflicting evidence in the record of probative value, a determination of the issue is for the jury. *Texas Employers Insurance Association v. Page*, 553 S.W.2d 98 (Tex.1977). The jury was the judge of the credibility of the witnesses and the weight to be given their testimony. It chose to accept the testimony given adversely to appellants' claim. The jury findings are not so against the weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. These points are overruled.

Appellants' 2nd, 3rd, and 4th points are without merit and are overruled.

The action of the trial court in instructing a verdict upon the implied warranty cause of action is reversed and that part of the judgment is remanded for trial on its merits. The causes of action based upon gross negligence, fraud and deceit, deceptive trade practices and strict liability, are severed from the cause of action based upon breach of implied warranty, and the judgment of the trial court as to such severed causes of action is affirmed. The judgment as to M. L. Coleman, which was granted based upon a plea of the statute of limitations, is affirmed.

REVERSED and REMANDED in part; AFFIRMED in part.

*On Motion for Rehearing*

■ Appellees urge, for the first time, that the submission of the strict tort liability cause of action to the jury was tantamount to a submission of the case on implied warranty, and, therefore, it was not error for the trial court to direct a verdict on implied warranty and "send the case to the jury solely on strict liability in tort." We do not agree with this argument.

In our original opinion, we expressed no opinion as to the propriety of submitting the case upon strict tort liability. Appellees made no objection to this submission and, consequently, did not raise this question by cross-point since the jury answered all issues on this cause of action favorably to appellees.

Appellants plead and proved (by the applicable standards as expressed in our opinion) a cause of action based upon implied warranty. They were entitled to a submission of this cause of action to the jury. Appellees now argue that, even though such a cause of action existed, appellants could only submit to the jury either the cause of action on implied warranty or strict tort liability, but not both. We do not find it necessary to express an opinion on this question because this question is not before us. According to their argument, appellees now say, in effect, that appellants had the choice of submitting either cause of action to the jury but could not submit both. Assuming, arguendo, and without deciding the soundness of this argument, it is obvious that such a choice was not given appellants. At the time of submitting any requested

issues by appellants and at any time prior to the submission of the court's charge to the jury, appellants were not given a choice as to which cause of action they chose to submit. They had been deprived of the right to make a choice—the choice was made by the trial court in granting the instructed verdict on the implied warranty cause of action. Based upon the trial court's action, appellants were left with only the cause of action of strict liability.

Even though the question of dual submission is not before us, we are not persuaded by the argument that the two causes of action are one and the same. See *Signal Oil and Gas Company v. Universal Oil Products*, 572 S.W.2d 320 (Tex.1978); *Mid Continent Aircraft Corporation v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Tex. 1978). In each cause of action, i. e., implied warranty and strict tort liability, the elements of proof are different, the burden of proof on some elements is different, and in some cases the measure of damages may be different.

The motions for rehearing filed by appellants and both appellees are overruled.

KEITH, Justice, dissenting.

I feel that we erred in reversing the judgment of the trial court; consequently, I respectfully dissent from the order overruling the motions for rehearing of the defendants.

As noted in the original opinion, plaintiffs did not carry their burden of proof of procuring favorable answers to the special issues submitting strict liability in tort. We overruled and I concurred all of plaintiffs' complaints except that which denied them a dual submission—*on the same facts*—of breach of an implied warranty in contract. As to the latter, we reversed the judgment and remanded the cause for a new trial.

I adopt the language of Justice Pope in his "concurring" opinion in *Signal Oil & Gas*

*Co. v. Universal Oil Products*, 572 S.W.2d 320, 333 (Tex.1978):

> "If this is, as the majority says, a tort case, then why is it being remanded for trial as a contract case? If it is a strict liability case, why is it remanded for retrial as a case for breach of an implied warranty? What the majority is really saying is that it is unimportant whether the plaintiff's action is one in tort or contract. Whatever the case might be, the plaintiff can try it once, lose it, and then start over in a new trial. The ruling is basically unfair and affords a plaintiff two separate trials on the same set of facts."

The plaintiffs had a shot at defendants under the strict liability theory with the relaxed standard of producing cause instead of the more onerous proximate cause issue. They avoided all the pitfalls accompanying submission under the implied warranty theory. See *Tex.Bus. & Comm.Code Ann. §§ 2.313–2.315 (1968); Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308, 313 (Tex.1978).

While I have not found a Texas case precisely in point, I note that the Court has discussed the possibility of conflict in the causation findings under the two theories. See *Signal Oil & Gas Co. v. Universal Oil Products*, supra (572 S.W.2d at 326).

Defendants have called to our attention several out-of-state cases, noted in the margin,\* which have, in effect, denied the dual submission. After my review of the authorities, I conclude that the trial court was correct in permitting only the single submission of the liability issue. Under no circumstances have the plaintiffs established *reversible* error under *Tex.R.Civ.P. 434.*

I would sustain Ciba-Geigy's second assignment in its motion for rehearing which was adopted by the other remaining defendant. I concur in the remainder of the

---

\* Defendants cite, inter alia, the following cases in support of their contention: *Realmuto v. Straub Motors, Inc.*, 65 N.J. 336, 322 A.2d 440, 443 (1974); *Austin v. Ford Motor Co.*, 86 Wis.2d 628, 273 N.W.2d 233, 241 (1979); *Hawk-* *eye Security Ins. Co. v. Ford Motor Co.*, 199 N.W.2d 373, 382 (Iowa 1972); *Sansing v. Firestone Tire & Rubber Co.*, 354 So.2d 895, 897 (Fla.App.1978).

original opinion but would affirm the judgment of the trial court for the reasons herein set forth.