JCW ELECTRONICS, INC., Appellant,

v.

Pearl Iriz GARZA, Individually and on Behalf of the Estate of Rolando Domingo Montez, Deceased, and Belinda Leigh Camacho, Individually and as Next Friend of Rolando Kadric Montez, a Minor Child, Appellees.

No. 13–02–00577–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Oct. 13, 2005.

Rehearing Overruled Dec. 1, 2005.

Thomas F. Nye, Brin & Brin, Corpus Christi, for appellant.

Tony Martinez, Benigno Martinez, III, Martinez & Barrera, L.L.P., Brownsville, Jane M.N. Webre, Scott, Douglass McConnico, L.L.P., Austin, for appellees.

A.C. Nelson, Brownsville, for ad litem.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

Appellant, JCW Electronics, Inc. ("JCW"), appeals from the trial court's judgment in a personal injury suit. After the suicide death of Rolando Domingo Montez while in custody in the Port Isabel City Jail, appellees, Pearl Iriz Garza,[1] individually and on behalf of the Estate of Rolando Domingo Montez, Deceased, and Belinda Leigh Camacho,[2] individually and as next friend of Rolando Kadric Montez, a minor child, filed suit against JCW, alleg-

ing negligence, breach of express and implied warranties, strict liability, and misrepresentation. The case was tried to a jury, which found in favor of appellees on questions of negligence, misrepresentation, and breach of implied warranty of fitness. The jury found damages for Garza and the minor child, but found no damages for Camacho in her individual capacity.

After the jury verdict, appellees filed a motion for judgment notwithstanding the verdict, asking the trial court to disregard certain inconsistent jury answers and render judgment against JCW for breach of contract and fraud. The trial court granted the motion and rendered judgment as requested by appellees. The trial court also rendered judgment for the damages found by the jury and awarded appellees their attorneys' fees, guardian ad litem fees, and costs. This appeal ensued. JCW challenges the trial court's judgment by eight issues; appellees raise one cross-issue. We modify the judgment, and as modified, affirm.

### A. FACTUAL BACKGROUND

In early 1998, JCW and the City of Port Isabel executed a contract under which JCW was to provide telephone service for the Port Isabel City Jail. In accordance with the contract, JCW installed a coinless telephone inside each jail cell so inmates could make collect calls. On the night of November 14, 1999, nineteen-year-old Rolando Domingo Montez ("Montez") was arrested on a misdemeanor charge of public intoxication and placed in Cell No. 1 of the Port Isabel City Jail. The following day Montez made three telephone calls to Garza from inside his jail cell, requesting that she post bail. Montez and Garza were subsequently informed that Montez

---

1. Pearl Iriz Garza is Rolando Domingo Montez's mother.

2. Belinda Leigh Camacho is Rolando Domingo Montez's girlfriend and the mother of his minor son, Rolando Kadric Montez.

would be released on his own recognizance at 5:00 p.m. on November 16, 1999. At 4:45 p.m. on the day of his intended release, Garza arrived at the city jail to pick up Montez. At 5:30 p.m., while Garza was waiting in the lobby, Montez was found dead, hanging from the cord of the telephone that JCW had installed in Cell No. 1.

## B. Breach of Contract

In its first and second issues, JCW asserts that a cause of action for breach of contract was not pleaded, not submitted to the jury, and not tried by consent. Therefore, JCW argues, the trial court erred in rendering a judgment for appellees for breach of contract.

### 1. Sufficiency of Pleading

■ The purpose of pleadings is "to give the adverse parties [fair] notice of each party's claims and defenses, as well as notice of the relief sought." *Woolam v. Tussing*, 54 S.W.3d 442, 447 (Tex.App.-Corpus Christi 2001, no pet.) (citing *Perez v. Briercroft Serv. Co.*, 809 S.W.2d 216, 218 (Tex.1991)); *see* Tex.R. Civ. P. 47(a). A pleading should "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." Tex.R. Civ. P. 45(b). Pleadings are construed liberally in favor of the pleader. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex.1977). "The court will look to the pleader's intendment" and uphold the pleading as to a cause of action even if some element of that cause of action has not been specifically alleged. *Gulf, C. & S.F. Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963); *see also Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex.1993) (op. on reh'g). "Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Bliss*, 368 S.W.2d at 599. "Mere formali-

ties, minor defects and technical insufficiencies" will not invalidate a petition as to a cause of action so long as the pleading gives fair notice to the opposing party. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex.1979). Nonetheless, "pleadings must give reasonable notice of the claims asserted." *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex.1995).

■ Appellees assert that their pleadings for breach of warranty concurrently pleaded a cause of action for breach of contract and that JCW's failure to file special exceptions to those pleadings has waived any complaint. However, the Texas Supreme Court has determined that breach of contract and breach of warranty are not the same cause of action. *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex.1991); *Roy v. Howard–Glendale Funeral Home*, 820 S.W.2d 844, 846–48 (Tex.App.-Houston [1st Dist.] 1991, writ denied). For example, while a breach of contract action is available to a buyer when the seller fails to make delivery, a breach of warranty action is available to a buyer who has finally accepted goods but discovered that they are defective in some manner. *Southwestern Bell Tel. Co.*, 811 S.W.2d at 576; *see Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 896–97 (Tex.App.-Houston [1st Dist.] 2002, no pet.). In addition, the remedies available under each cause of action differ. *See Southwestern Bell Tel. Co.*, 811 S.W.2d at 576; *compare* Tex. Bus. & Com. Code Ann. § 2.711 (Vernon 1994) (remedies available under UCC breach of contract claim), *with id.* § 2.714 (remedies available under UCC breach of warranty claim).

■ While pleadings must be construed as favorably as possible to the pleader, the inference that a cause of action has been pleaded must be reasonable in light of what is specifically stated in the

pleading. *See Boyles,* 855 S.W.2d at 601. It is true that where a plaintiff's petition omits an element of a cause of action or fails to state it with sufficient clarity, a defendant must specifically except to the pleading or he has waived his complaint. Tex.R. Civ. P. 90; *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 233 (Tex.App.-San Antonio 2001, pet. denied). However, where a plaintiff pleads none of the elements of a viable cause of action, the defendant is not required to file special exceptions which would suggest to the plaintiff possible causes of action against the defendant. *Crabtree v. Ray Richey & Co.,* 682 S.W.2d 727, 728 (Tex.App.-Fort Worth 1985, no writ).

Because breach of contract and breach of warranty are separate and distinct causes of action, we reject the assertion that the pleading and submission of one constitutes the pleading and submission of the other. Causes of action for breach of contract and breach of warranty must be pleaded and submitted separately. We find nothing in the pleadings that would indicate to JCW that appellees had an intention to pursue a separate cause of action for breach of contract. Because no element of a cause of action for breach of contract was present, JCW was not obligated to file special exceptions. JCW's first issue as it relates to breach of contract is sustained.

### 2. *Submission to the Jury and Trial by Consent*

■ In further support of the trial court's judgment for breach of contract, appellees maintain that the jury questions related to the breach of warranty issue sufficiently equated to elements of a breach of contract cause of action so it was tried by consent. *See* Tex.R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

■ Generally, where a complete and independent ground of recovery consists of multiple issues, and the jury charge omits issues which constitute only a part of that ground while other issues necessarily referable to that ground are submitted and answered, the omitted elements are deemed found in support of the judgment if no objection is made and they are supported by some evidence. Tex.R. Civ. P. 279; *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990). However, where no element of a ground of recovery is submitted or requested, and the entire theory is omitted from the charge, that ground of recovery is waived. Tex.R. Civ. P. 279; *Ramos,* 784 S.W.2d at 668; *Choi v. McKenzie,* 975 S.W.2d 740, 744 (Tex.App.-Corpus Christi 1998, pet. denied). In addition, where an entire theory is omitted from the charge, appellants have no duty to object to the omission of an issue, nor does a trial court have authority to deem findings or make findings of fact pursuant to rule 279. *Choi,* 975 S.W.2d at 744 (citing *Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446, 448 (Tex.1984)).

■ "The rule of trial by consent is limited to those exceptional cases where the parties clearly tried an unpleaded issue by consent." *Libhart v. Copeland,* 949 S.W.2d 783, 797 (Tex.App.-Waco 1997, no writ.) (citing *White v. Sullins,* 917 S.W.2d 158, 160 (Tex.App.-Beaumont 1996, writ denied)). Submission to the jury is an essential part of the trial of an issue. *Harkey v. Tex. Employers' Ins. Ass'n,* 146 Tex. 504, 208 S.W.2d 919, 922 (Tex.1948). Where evidence relevant to an unpleaded issue may have been submitted without objection, an objection to the submission of a jury question on that issue on any tena-

ble ground prevents the implication that the issue was tried by consent. *See Harkey,* 208 S.W.2d at 923; *Marine Creek Partners v. Caldwell,* 926 S.W.2d 793, 796 (Tex.App.-Fort Worth 1996, no writ); *Morton v. Humber,* 399 S.W.2d 831, 832 (Tex.Civ.App.-Eastland 1966, no writ). We conclude that failure to request or submit any element of that cause of action to the jury prevents any implication that the issue was tried by consent.

Appellees did not request jury questions specific to breach of contract. For the reasons discussed in Part B.1, *supra,* we determine that questions submitted regarding breach of warranty are not equivalent to the submission of questions regarding breach of contract. Because no element of breach of contract was submitted to the jury, appellees have waived any claim for that cause of action. JCW's second issue as it relates to breach of contract is sustained.

### C. FRAUD

In its first and second issues, JCW also asserts that a cause of action for fraud was not pleaded, not submitted to the jury, and not tried by consent. Therefore, JCW argues, the trial court erred in rendering a judgment for appellees for fraud.

■ In its fourth issue, JCW asserts that whether or not appellees successfully pleaded fraud, they are nonetheless barred from recovering any damages under the Texas Proportionate Responsibility Statute. We agree.

■ Proportionate responsibility under Chapter 33 of the civil practice and remedies code provides that "a claimant may

not recover damages if his percentage of responsibility is greater than 50 percent." TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.2004–05). Chapter 33 applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." *Id.* § 33.002(a)(1). Because fraud is a claim based on tort, Chapter 33 applies.[3] *See JHC Ventures, L.P. v. Fast Trucking,* 94 S.W.3d 762, 773 (Tex. App.-San Antonio 2002, no pet.) ("As fraud is clearly a claim based on tort, the Texas Proportionate Responsibility Statute applies to [the] fraud claim.").

The jury found that sixty percent of the responsibility for the death of Rolando Montez was attributable to him. Neither party challenges this finding. Therefore, assuming, without deciding, that appellees successfully pleaded fraud as a cause of action, because it is a claim based in tort subject to Chapter 33, appellees are barred from recovering damages based on their fraud claim. JCW's fourth issue is sustained.

In view of our disposition of JCW's fourth issue, it is not necessary to address JCW's first and second issues as they relate to fraud. *See* Tex.R.App. P. 47.1.

### D. FAILURE TO SUBMIT AFFIRMATIVE DEFENSE

■ In its fifth issue, JCW contends that it established the affirmative defense of suicide as a matter of law. However, JCW fails to provide any citations to the record in support of this argument. Because we find this argument is inadequate-

---

**3.** Although appellees assert that Chapter 33 does not apply to fraud because it is an intentional tort, the 1995 amendments to the statute specifically removed the exception for intentional torts. *See* Act of May 18, 1995, 74th

Leg., R.S., ch. 136, § 1, sec. 33.002, 1995 Tex. Gen. Laws 971 (Vernon) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.2004–05)).

ly briefed, *see* Tex.R.App. P. 38.1(h), we consider it waived.

Also as part of its fifth issue, JCW asserts, in the alternative, that the trial court erred by failing to submit to the jury its tendered question on the affirmative defense of suicide, thus entitling it to a new trial. A trial court has considerable discretion when fashioning a jury charge. *DeLeon v. Pickens*, 933 S.W.2d 286, 290 (Tex.App.-Corpus Christi 1996, writ denied). The decision to submit or refuse a particular instruction is subject to an abuse of discretion standard of review. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex.2000). Error occurs only when the trial court acts without reference to any guiding principles. *Fluor Daniel, Inc. v. Boyd*, 941 S.W.2d 292, 295 (Tex.App.-Corpus Christi 1996, writ denied). However, even where error may have occurred, rule 44.1(a) of the Texas Rules of Appellate Procedure requires that no judgment be reversed on appeal due to an error of the trial court unless that error probably led to the rendition of an improper judgment. Tex.R.App. P. 44.1(a).

JCW asserts that it was entitled to a question on the affirmative defense of suicide under section 93.001(a)(2) of the Texas Civil Practice and Remedies Code because Montez's suicide was the sole cause of the damages sustained.[4] *See* Tex. Civ. Prac. & Rem.Code Ann. § 93.001(a)(2) (Vernon 2005). JCW tendered two questions on this issue: (1) did Rolando Domingo Montez commit suicide; and (2) was Rolando Domingo Montez's suicide the sole cause of the damages sustained, if any. The trial court denied both questions tendered by JCW. Instead, the court submitted the following two questions of comparative responsibility regarding Montez's death:

Question No. 1.

Did the negligence, if any, of those named below proximately cause the death of Rolando Domingo Montez in question?

Answer "Yes" or "No" for each of the following:

   a. JCW Electronics

   b. The City of Port Isabel

   c. Quadrum Telecommunications, Inc.

   d. Rolando Montez

Question No. 2.

What percentage of the negligence that caused the death of Rolando Montez do you find to be attributable to each of those found by you, in your answer to Question No. 1?

   a. JCW Electronics

   b. The City of Port Isabel

   c. Quadrum Telecommunications, Inc.

   d. Rolando Montez

The questions actually submitted by the trial court presented the jury with the possibility that Montez may have been fully responsible for his own death. We conclude that the substance of the affirmative defense sought by JCW was submitted to the jury and note that "[a] judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question." Tex.R. Civ. P. 278. Submission of the additional

---

4. Section 93.001(a)(2) provides that "[i]t is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was ... committing or attempting to commit suicide, and the plaintiff's conduct in committing ... suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense." Tex. Civ. Prac. & Rem.Code Ann. § 93.001(a)(2) (Vernon 2005).

questions would have been only another shade of the same issue. We hold the trial court's refusal to submit JCW's tendered questions did not lead to the rendition of an improper judgment, and therefore was not reversible error. We overrule that part of JCW's fifth issue that is not waived.

### E. Breach of Implied Warranty of Fitness for a Particular Purpose

In one cross-issue, appellees urge that regardless of the validity of the causes of action for breach of contract and fraud, we should nonetheless affirm the judgment based on the jury's finding that JCW breached the implied warranty of fitness for a particular purpose. In opposition to appellees' cross-issue, JCW raises several arguments.

#### 1. *Waiver*

Initially, JCW argues that appellees have waived their cross-issue because (1) the judgment submitted by appellees and signed by the trial court specifically states that "[p]laintiffs' causes of action either pleaded or tried by implication other than the breach of contract and fraud are hereby dismissed," and (2) appellees failed to complain to the trial court that the judgment dismissed the other claims.

■■■ Typically when a jury returns favorable findings on two or more alternative theories, the prevailing party need not formally waive the alternative findings, but may seek recovery under an alternative theory if the judgment is reversed on appeal. *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988); *Norwest Mortgage, Inc. v. Salinas,* 999 S.W.2d 846, 865 (Tex.App.-Corpus Christi 1999, pet. denied). In such a situation, the successful party had no reason to complain to the trial court until the judgment was overturned on appeal, and thus it is not necessary for the error to have been first brought to the trial court's attention. *Boyce Iron Works, Inc.,* 747 S.W.2d at 787. Therefore, it was not necessary for appellees to have complained about their recovery based on breach of contract and fraud unless or until such theories were overturned on appeal.

■■■ JCW, however, asserts that this is not a case where appellees are simply seeking recovery under an alternative theory. JCW argues that by filing a motion for judgment notwithstanding the verdict, appellees asked the court to enter a specific judgment and cannot now attack that very judgment. *See Casu v. Marathon Ref. Co.,* 896 S.W.2d 388, 390 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (op. on reh'g.); *D/FW Commercial Roofing Co. v. Mehra,* 854 S.W.2d 182, 190 (Tex.App.-Dallas 1993, no writ) ("A party who induces the court to render a certain judgment cannot later complain of that judgment.").

■■■ The general rule is that when a party files a motion for entry of judgment, that party cannot take a position on appeal that is inconsistent with that part of the judgment. *See Litton Indus. Prod., Inc. v. Gammage,* 668 S.W.2d 319, 321–22 (Tex.1984) (citing *Miner–Dederick Constr. Corp. v. Mid–County Rental Serv., Inc.,* 603 S.W.2d 193 (Tex.1980)). When applying this rule, the focus is on whether the position taken by the party on appeal is inconsistent with the judgment requested of the trial court. *See Litton,* 668 S.W.2d at 322 ("We disapprove a practice by which a party, by motion, induces the trial court ... to render a judgment, but reserves in a brief the right for the movant to attack the judgment if the court grants the motion. Litton could not have it both ways.").

The position taken by appellees here is not inconsistent with the judgment they requested of the trial court. In their motion,[5] appellees relied on the jury's finding of breach of implied warranty as part of their argument for judgment based on breach of contract. Appellees here rely on that same finding on breach of implied warranty as an alternate theory of recovery. Moreover, while the "Amended Final Judgment" signed by the trial court based recovery on breach of contract and fraud, it also incorporated the jury's finding on breach of implied warranty by rendering judgment that "the special verdict of the jury in favor of [appellees] in that JCW's breach of implied warranty of fitness for a particular purpose or breach of contract proximately caused the death of Rolando Domingo Montez."

Because appellees' position as to the jury's finding of breach of implied warranty of fitness for a particular purpose remains consistent, and such special verdict was incorporated into the judgment, we conclude that appellees have preserved their right to recover under this alternative theory.[6] *See Boyce Iron Works*, 747 S.W.2d at 787 ("By incorporating the jury's findings into the court's judgment, Boyce did everything it could to preserve the right of recovery under the alternate theory."). Accordingly, we conclude that appellees have not waived their cross-issue.

### 3. *Sufficiency of the Evidence of Breach of Implied Warranty of Fitness*

In further opposition to appellees' cross-issue, JCW contends (1) the evidence is legally insufficient to support the jury's finding that the telephone was to be used for other than an ordinary purpose, and (2) the evidence is legally and factually insufficient to support the jury's finding that a breach of the implied warranty of fitness was the proximate cause of the injuries sustained.

### a. Standard of Review

When we review a "no evidence" or legal sufficiency of the evidence issue, we must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). A no evidence challenge will be sustained when the record discloses that (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). If there is more than a scintilla of evidence

**5.** In their motion for judgment notwithstanding the verdict, appellees opposed entry of judgment on the special issues contained in jury questions five, six, and seven, in which the jury failed to find product and marketing defects, and question twelve, in which the jury failed to find a common-law marriage between Montez and Camacho. Appellees further requested the trial court to make an implied finding that the deceased was a third-party beneficiary of the contract between JCW and the City of Port Isabel, based in part on the affirmative jury finding to question nine on breach of implied warranty of fitness for a particular purpose. Finally, appellees asked the trial court to render judgment in their favor on the jury's special verdict as to breach of contract and fraud for the purpose of beginning the appellate timetable, while reserving the right to file a motion for new trial and to appeal from any adverse findings in the jury's special verdict.

**6.** We express no opinion regarding whether appellees have preserved the right to recover under any other alternative theories.

to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner,* 953 S.W.2d at 711.

When we review an "insufficient evidence" or factual sufficiency of the evidence issue, we consider all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We review the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the evidence, assign the weight to be given to testimony, and resolve inconsistencies within or conflicts among the witnesses' testimony. *Corpus Christi Area Teachers Credit Union v. Hernandez,* 814 S.W.2d 195, 197 (Tex. App.-San Antonio 1991, no writ). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding, or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996).

b. Use Other than Ordinary Purpose

JCW asserts the record contains "no evidence" showing that the telephone was intended to be used for other than its ordinary purpose. Therefore, there was no implied warranty of fitness for a particular purpose. A breach of an implied warranty of fitness for a particular purpose occurs when a seller, at the time of contracting, has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. TEX. BUS. & COM.

CODE ANN. § 2.315 (Vernon 1994); *Chandler v. Gene Messer Ford, Inc.,* 81 S.W.3d 493, 503 (Tex.App.-Eastland 2002, pet. denied); *Lester v. Logan,* 893 S.W.2d 570, 574 (Tex.App.-Corpus Christi 1994, writ denied). The particular purpose must differ from the ordinary use. *See, e.g., Chandler,* 81 S.W.3d at 493, 503 (finding ordinary purpose of vehicle was transportation and ordinary purpose of air bag was serving as part of the restraint system); *Miles v. Ford Motor Co.,* 922 S.W.2d 572, 587 (Tex.App.Texarkana 1996), *rev'd in part on other grounds,* 967 S.W.2d 377 (Tex. 1998) (finding that carrying passengers is the ordinary purpose of passenger truck); *Crosbyton Seed Co. v. Mechura Farms,* 875 S.W.2d 353, 365 (Tex.App.-Corpus Christi 1994, no writ) (finding no evidence that producing commercial cash crop is anything other than ordinary purpose of seed purchased). A particular purpose can also result from a specific use by the buyer which is peculiar to the nature of his business. *Crosbyton Seed,* 875 S.W.2d at 365 (citing *Lanphier Constr. Co. v. Fowco Constr. Co.,* 523 S.W.2d 29, 41 (Tex.App.-Corpus Christi 1975, writ ref'd n.r.e.) (finding that use of asphalt for paving parking lots and entrances at high school was sufficient particular purpose)); *Lester,* 893 S.W.2d at 574–75 (finding hay was not fit for particular purpose of feeding livestock).

Port Isabel Chief of Police Joel Ochoa testified that during the course of discussions with JCW about potential telephone services for the jail, Bradley Woods, owner of JCW, introduced the idea of placing the telephones inside the jail cells and represented that the phones (1) would not be used as a means for an inmate to harm himself or anyone else, and (2) would be safe for unattended use by inmates. Ochoa further testified that before these discussions, he had never heard of placing telephones inside jail cells, or of suicides

involving such phones, and that he relied on the information provided by JCW in deciding to place the phones inside the jail cells. Ochoa, Port Isabel City Attorney John Haywood, and city manager Roberto H. Garcia testified that at a meeting on December 10, 1999, after Montez's suicide, Woods and JCW general counsel James K. Mayo acknowledged that prior to placing the telephones in the Port Isabel City Jail, they were aware of incidents of suicides resulting from use of telephone cords. Ochoa testified that if he had been provided with this information, he would never have allowed JCW to place the telephones inside the cells.

Woods testified that he had been placing telephones in jail facilities and public places for eleven years. At the time of trial, Woods had approximately 200 phones in fifty or sixty jail facilities. Woods and Mayo both testified that before the Montez incident they had no knowledge of jail suicides using telephone cords and made no such acknowledgments during the December 10 meeting. Woods further testified that he never guaranteed the safety of any inmates, and that while it is his job to advise clients about the equipment that is available, the client makes the decision.

Lennie Schrimsher, owner of Quadrum Telecommunications, the manufacturer of the blue steel housing for the telephone that was placed in the cell, testified that these telephones were never intended for unattended use by inmates. Although he was aware that the phones were in correctional facilities, he thought they were only in supervised public areas. He disagreed that this particular telephone was safe for unattended use by inmates, and said there are other phones designed for that purpose. He also testified that it was common knowledge in the industry that a telephone or other object placed in a cell would be a danger to inmates.

After reviewing the entire record, we conclude it contains more than a scintilla of evidence showing that the telephones were not safe for the particular purpose of unattended or unsupervised use by inmates. Thus, the evidence is legally sufficient to support the jury's finding.

### c. Proximate Cause

■■■ JCW further contends the evidence is legally and factually insufficient to support the jury's finding that a breach of the implied warranty of fitness was the proximate cause of the damages sustained. A party may recover consequential damages resulting from such a breach for an "injury to person or property proximately resulting from any breach of warranty." Tex. Bus. & Com.Code Ann. § 2.715 (Vernon 1994).

■■■ Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995) (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992)). Here, JCW challenges only the sufficiency of the evidence establishing that the breach of implied warranty was the cause in fact of appellees' injuries. Cause in fact requires that the defendant's conduct or product be a substantial factor in bringing about the injury which would not otherwise have occurred. *Id.* (citing *Prudential Ins. Co. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex.1995)). JCW contends the connection between any breach of implied warranty of the telephone installed in the jail cell and appellees' injuries is too attenuated to constitute legal cause because "[l]egal cause is not established if the defendant's product ... does no more than furnish the condition that makes the plaintiff's injury possible." *Union Pump Co.*, 898 S.W.2d at 776 (citing *Lear Siegler Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991)).

We note that in cases where courts have declined to find proximate cause, the property at issue was only peripherally related to the damage or served only as a preliminary condition to the sequence of events leading to the harm. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995); *see Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998) (finding that unlocked doors permitted escape from hospital but were not a proximate cause of death when patient committed suicide by jumping into path of an oncoming truck); *Union Pump Co.*, 898 S.W.2d at 776 (finding that where Allbritton was injured falling off a pipe rack after extinguishing a pump fire, the pump was not a proximate cause of her injuries). In the present case, the injuries were immediately and directly related to the presence of the telephone in the jail cell. *See Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975) (finding that injuries were proximately caused by the absence of rails on the side of a bed). Because there is an immediate causal nexus between the presence of the telephone in the jail cell and appellees' injuries, we conclude that the evidence is legally and factually sufficient to establish cause in fact. Accordingly, we hold the evidence is legally and factually sufficient to support the jury's finding that the breach of implied warranty of fitness was the proximate cause of appellees' injuries.

5. *Proportionate Responsibility Statute*

■ JCW asserts that appellees' case sounded in tort because it was based on personal injuries. Thus, JCW argues, recovery is barred by chapter 33 of the Texas Civil Practice and Remedies Code because the jury found that Montez was more than fifty percent responsible for his death. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 33.001–33.002 (Vernon Supp.2004–05).

Chapter 33 applies to "any cause of action based on tort" or any action brought under the Deceptive Trade Practices—Consumer Protection Act (DTPA) "in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." *Id.* § 33.002(a). Chapter 33 specifically excludes from coverage actions to collect workers' compensation benefits, claims for exemplary damages, or actions arising from the manufacture of methamphetamine. *See id.* § 33.002(c). However, "Chapter 33 does not explicitly address its applicability in UCC [Uniform Commercial Code] cases." *Southwest Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 107 (Tex.2004).

■ While traditionally it has been true that "when considering a common law remedy ... an implied warranty arising from sales sounds in tort and not in contract," the UCC provides a statutory remedy for personal injuries suffered as a result of a breach of an implied warranty. *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 463 (Tex.1980). Because "the traditional distinctions between tort and contract are not relevant," the supreme court has determined that, whether or not a claim would be considered a tort for common law purposes, decisions based on the common law are not determinative in cases under the UCC dealing with statutory remedies. *Id.; see JHC Ventures*, 94 S.W.3d at 772–73. We must, therefore, look beyond the common law to determine whether chapter 33 should be applied to breach of implied warranty claims under the UCC.

■ In making that determination, we must bear in mind the purpose and effect of both statutes so that the application of one does not undermine the effect and purpose of the other. *See Southwest*

*Bank,* 149 S.W.3d at 110. One of the primary purposes and policies underlying the adoption of the UCC was "to make uniform the law among various jurisdictions." TEX. BUS. & COM.CODE ANN. § 1.103(a)(3) (Vernon Supp.2004–05). The UCC was adopted "as a comprehensive and integrated act to facilitate the continued expansion of commercial practices." *Garcia,* 610 S.W.2d at 461. To achieve that end, Article 2 of the UCC "supplies a complete framework of rights and remedies for transacting parties." *Id.* Given the UCC's purpose as a "carefully integrated" permanent uniform codification covering an entire field of law, "we must be careful not to interpret any statute that does not explicitly amend or modify the UCC as doing so impliedly." *Southwest Bank,* 149 S.W.3d at 110–11.

The supreme court has determined that under Article 2 of the UCC, consideration should be given to the fault or negligence of the buyer in determining recovery of consequential damages for a breach of an implied warranty. *Signal Oil & Gas Co. v. Universal Oil Products,* 572 S.W.2d 320, 328 (Tex.1978). Although the buyer's conduct may affect his recovery of consequential damages, the UCC does not state that negligence or fault on the part of a buyer totally bars recovery. *Id.* "The fact that the buyer's negligence is a proximate cause of the damages does not negate the fact that a part of the damages was still a result of the breach of warranty or unsuitability of the product." *Id.* In so holding, the Supreme Court of Texas declined to apply the modified comparative negligence statute in effect at the time [7] to UCC breach of implied warranty claims, instead noting that under the UCC, the buyer was "entitled to recover that portion of the damages caused by the unsuitable product, even if the buyer's negligence or fault constitute[d] a greater cause of the damages than the seller's breach." *Id.* at 328–29.

Therefore, given the nature of UCC article 2 as a complete, integrated legal framework governing sales of products, and the supreme court's refusal to apply comparative liability statutes to UCC article 2, we conclude that any extension of chapter 33's proportionate responsibility scheme to UCC article 2 could potentially disrupt and override "the UCC's express purpose of furthering uniformity among the states." *Southwest Bank,* 149 S.W.3d at 110–11. Accordingly, we decline to extend chapter 33 to appellees' breach of implied warranty claim. Appellees' cross-issue is sustained.

### F. ATTORNEY FEES

In its sixth issue, JCW asserts the trial court erred in awarding attorney's fees to appellees. Breach of contract and breach of warranty are separate and distinct claims, and the damages available to each differ. *Southwestern Bell Tel. Co.,* 811 S.W.2d at 576; *compare* TEX. BUS. & COM.CODE ANN. § 2.711 (Vernon 1994) *with id.* § 2.714. Attorney's fees are generally recoverable for a successful action on breach of contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). However, because breach of contract is not a valid basis for the trial court's judgment, the award of attorney's fees is not proper on that ground, and Texas courts have consistently held that a party cannot recover attorney's fees under a UCC breach of warranty claim. *Ellis v. Precision Engine Rebuilders, Inc.,* 68 S.W.3d 894, 897 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *JHC Ventures, L.P.,* 94 S.W.3d at

---

7. *See* Act of April 9, 1973, 63rd Leg., R.S., ch. 28, 1973 Tex. Gen. Laws 41, *repealed by* Act of June 16, 1985, 69th Leg., R.S., ch. 959 § 1, 1985 Tex. Gen. Laws 3270 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 et. seq. (Vernon Supp.2004–05)).

769; *Harris Packaging Corp. v. Baker Concrete Constr.*, 982 S.W.2d 62, 69 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). The trial court therefore erred in awarding attorney's fees to appellees. JCW's sixth issue is sustained.

### G. Costs

In its eighth issue, JCW asserts the trial court erred in its award of costs. The trial court awarded appellees guardian ad litem fees in the amount of $25,000 to be taxed as costs, and also awarded appellees "costs ... in the amount set forth in [appellees'] Bill of Costs." The appellees' Bill of Costs charged costs for copying fees, expert witness travel and per diem expenses, court reporter fees, filing fees, and fees of service, for a total amount of $19,555.25.

The assessment of costs is within the trial court's discretion and will be reversed on appeal only if the trial court abused its discretion. *Allen v. Crabtree*, 936 S.W.2d 6, 7 (Tex.App.-Texarkana 1996, no writ). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without any "reference to any guiding principles." *Id.* (citing *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986)). Under rule 131 of the Texas Rules of Civil Procedure, a "successful party to a suit shall recover ... all costs incurred therein, except where otherwise provided." Tex.R. Civ. P. 131. In addition, under rule 141, a trial court may, "for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." Tex.R. Civ. P. 141. However, "the power to tax costs for good cause shown, does not include the power to tax, as costs, items which are not normally allowed." *Whitley v. King*, 581 S.W.2d 541, 545 (Tex. Civ.App.-Fort Worth 1979, no writ).

The civil practice and remedies code provides that in awarding costs a court may include "fees of the clerk and services fees due the county," and "fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit." Tex. Civ. Prac. & Rem.Code Ann. § 31.007(b)(1)-(2) (Vernon 1997). Therefore, costs awarded in the amounts of $178.00 and $937.88 for filing fees and fees of service, respectively, are appropriate, as are fees of the court reporter in the amount of $13,199.15. *See id.* In addition, under rule 173.6, guardian ad litem fees in the amount of $25,000 were properly taxed as costs of court. Tex.R. Civ. P. 173.6(c) ("The court may tax a guardian ad litem's compensation as costs of court.").

Appellees' Bill of Costs shows charges of $3,175.47 for "[e]xpert witness travel and per diem expenses, excluding compensation for preparation and testifying." However, "regardless of any good cause shown, costs of experts are incidental expenses in preparation for trial and not recoverable." *Richards v. Mena*, 907 S.W.2d 566, 571 (Tex.App.-Corpus Christi 1995, writ dism'd) (citing *Whitley*, 581 S.W.2d at 544). We conclude it was an abuse of discretion for the trial court to award costs for expert witness travel and per diem expenses.

The Bill of Costs also shows charges of $2,064.75 for "photocopying document [sic] necessary for the successful prosecution of this matter." Rule 140 provides that "no fee for a copy of a paper not required by law or these rules to be copied shall be taxed in the bill of costs." Tex.R. Civ. P. 140. Documents that appellees consider necessary for prosecution of a case do not equate with documents required by law. Because there was no showing that the photocopies were required by law, it was also an abuse of discretion for the trial court to tax these costs against JCW.

JCW's eighth issue is sustained in part. The trial court's award of costs is modified to eliminate the costs taxed against JCW for expert witness travel and per diem expenses, and photocopies not required by law.

In view of our disposition of these issues, it is not necessary to address JCW's remaining issues. *See* TEX.R.APP. P. 47.1.

We reverse the trial court's (1) award of attorneys' fees, (2) award of costs in the amount of $3,175.47 for expert witness travel and per diem expenses, and (3) award of costs in the amount of $2,064.75 for photocopying. We modify the judgment of the trial court to reflect that it is being rendered in favor of appellees for their breach of implied warranty of fitness for a particular purpose cause of action. We also modify the judgment of the trial court to reflect the award of costs in the proper amount of $14,315.03. As modified, the judgment of the trial court is affirmed.