IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-1042
════════════
 
JCW Electronics, Inc., 
Petitioner,
 
v.
 
Pearl Iriz Garza, Individually and on behalf of the Estate 
of
Rolando Domingo Montez, Deceased, and Belinda Leigh Camacho, Individually 
and as next friend of Rolando Kadric Montez,
a Minor Child, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 18, 
2007
 
 
Justice Medina delivered the opinion of 
the Court.
 
Chief Justice Jefferson filed a 
concurring opinion in which Justice 
O’Neill joined.
 
 
Chapter 33 of 
the Texas Civil Practice and Remedies Code apportions responsibility among those 
responsible for damages in “any cause of action based on tort.” Tex. Civ. Prac. & Rem. Code § 
33.002(a)(1). In this appeal, we are asked whether a 
claim for breach of implied warranty under article 2 of the Texas Uniform 
Commercial Code[1] is a tort claim to which Chapter 33’s 
apportionment scheme should apply. The court of appeals concluded that Chapter 
33 did not apply to this type of claim because a “complete framework of rights 
and remedies for transacting parties” was already available under article 2 of 
the UCC. 176 S.W.3d 618, 633 (quoting Garcia v. Tex. Instruments, Inc., 
610 S.W.2d 456, 461 (Tex. 1980)). We disagree and hold that a party 
who seeks damages for death or personal injury under a breach of implied 
warranty claim seeks damages in tort and is accordingly 
subject to Chapter 33.
I
            
On November 14, 1999, Rolando Domingo Montez 
was arrested for public intoxication and placed in the Port Isabel jail. The 
next day, Montez called his mother, Pearl Iriz Garza, to arrange his bail. Montez made the call from his jail cell on a phone provided 
by JCW Electronics, Inc. (“JCW”). JCW had installed these collect-only 
telephones for inmate use under a 1998 contract with the Port Isabel Police 
Department. Tragically, on the day he was to be released, Montez was found dead in his cell, hanging from the 
telephone cord.
            
Garza sued the City of Port 
Isabel for her son’s death and subsequently joined JCW as 
a defendant.[2] The case was tried to a jury who 
generally found in Garza’s favor on claims of negligence, misrepresentation, and 
breach of implied warranty of fitness. The jury attributed sixty percent of the 
liability to Montez, twenty-five percent to the City 
of Port Isabel, 
and fifteen percent to JCW. JCW moved for judgment, arguing that the sixty 
percent finding of fault the jury attributed to Montez 
barred Garza’s recovery on all pleaded claims under Chapter 33. Garza, however, 
moved to disregard certain inconsistent jury findings and for judgment 
notwithstanding the verdict, asking the court to render judgment against JCW for 
breach of contract and fraud. The trial court granted Garza’s motions, rendering 
judgment for her on these theories over JCW’s 
objections.
            
The court of appeals declined to affirm the judgment under these 
theories, concluding that Garza’s contract claim had not been pled and her fraud 
claim was barred under Chapter 33. 176 S.W.3d at 
625-26. The court of appeals concluded, however, that Garza’s judgment 
could be affirmed on the jury’s finding of breach of implied warranty of fitness 
for a particular purpose because there was evidence that JCW had represented to 
the Port Isabel Chief of Police that the telephones would be safe for 
“unattended or unsupervised use by inmates.” Id. at 630. In affirming the trial court’s judgment, the court 
rejected JCW’s contention that Chapter 33 barred 
Garza’s implied warranty claim. Id. at 
632. The court of appeals held instead that Chapter 33 did not apply to a 
claim for breach of implied warranty, noting that “any extension of chapter 33’s 
proportionate responsibility scheme to UCC article 2 could potentially disrupt 
and override ‘the UCC’s express purpose of furthering 
uniformity among the states.’” Id. at 
633 (quoting Sw. Bank v. Information Support 
Concepts, Inc., 149 S.W.3d 104, 110-11 (Tex. 2004)). We granted review to consider 
whether Chapter 33’s proportionate responsibility scheme extends to a breach of 
implied warranty claim.
II
            
Over the past two decades, the Legislature has repeatedly modified the 
comparative fault rules in tort cases. In 1987, the Legislature replaced the 
existing statutory and common law schemes with Chapter 33’s comparative 
responsibility framework. See Act of June 3, 1987, 70th Leg., 1st C.S., 
ch. 2, §§ 2.03-2.11B, 1987 Tex. Gen. Laws 37, 40-44 
(amended 1995). In 1995, the Legislature again amended Chapter 33 by replacing 
comparative responsibility with proportionate responsibility. See Act of 
May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. 
Gen. Laws 971, 971-75 (amended 2003). Further amendments were made to the 
chapter in 2003. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 4.01—.12, 2003 Tex. Gen. Laws 847, 855-59 (codified as 
amended at Tex. Civ. Prac. & Rem. Code §§ 
33.001—.017). Because of these repeated amendments, we must 
first identify which version of Chapter 33 governs this case. Here, the 1995 
version of Chapter 33 applies because Garza’s son died on November 16, 1999.[3]
            
            
            
            
            
            
            
            
           A
            
Garza argues that the Legislature intended to exclude implied warranty 
claims from Chapter 33 when it replaced its comparative responsibility scheme, 
adopted in 1987, with proportionate responsibility in 1995. Garza’s argument 
rests on the deletion of a previous reference to implied warranty in the 1995 
amendments. The 1987 version had expressly provided for the apportionment of 
responsibility in negligence, strict liability, and UCC article 2 breach of warranty claims when the damages sought were for 
personal injury, death, or property damage.[4] See Act of June 3, 1987, 70th 
Leg., 1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 
40 (codified as amended at Tex. Civ. 
Prac. & Rem. Code § 
33.001(b) (1987)). The 1995 amendments, however, deleted 
mention of specific theories of liability, providing instead that the chapter 
should apply “to any cause of action based on tort in which a defendant, 
settling person, or responsible third party is found responsible for a 
percentage of the harm for which relief is sought.” See Act of May 8, 
1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. 
Laws 971, 971 (codified as amended at Tex. Civ. Prac. & Rem. Code § 
33.002(a) (1995)) (emphasis added). Thus, Garza argues that a breach of implied 
warranty claim is not a “cause of action based on tort.”
            
Contrary to Garza’s argument, however, there is no indication that the 
Legislature intended to restrict the scope of Chapter 33 by explicitly removing 
implied warranties. On the contrary, the 1995 amendments expanded the chapter’s 
scope. Whereas the 1987 version had expressly excluded intentional torts, the 
1995 amendments removed that exclusion. Id. And although the 1995 version 
ceased to identify specific liability theories such as negligence, products 
liability, and breach of implied warranty, it is nevertheless clear from the 
statute as a whole that the Legislature intended for Chapter 33 to continue to 
cover these claims under its broad pronouncement that “this chapter applies to 
any cause of action based on tort.” Id. (emphasis added).
            
Garza’s argument rests on the dubious proposition that breach of implied 
warranty is not, or can never be, “a cause of action based on tort.” This, of 
course, is contrary to Texas law. We have often recognized that 
“[i]mplied warranties are 
created by operation of law and are grounded more in tort than in contract.” 
La Sara Grain Co. v. First Nat’l Bank, 673 S.W.2d 
558, 565 (Tex. 1984); see also Rocky Mountain Helicopters, Inc. v. 
Lubbock County Hosp. Dist., 987 S.W.2d 50, 52 (Tex. 1998); Melody Home 
Mfg. Co. v. Barnes, 741 S.W.2d 349, 352 (Tex. 1987); Garcia v. Tex. 
Instruments, Inc., 610 S.W.2d 456, 462-63 (Tex. 1980); Humber v. 
Morton, 426 S.W.2d 554, 556 (Tex. 1968). Conceptually, the breach of an 
implied warranty can either be in contract or in tort depending on the 
circumstances. As Dean Prosser observed long ago, this area of the law is 
complicated “by the peculiar and uncertain nature and character of warranty, a 
freak hybrid born of the illicit intercourse of tort and contract.” William L. 
Prosser, The Assault Upon the Citadel (Strict 
Liability to the Consumer), 69 Yale 
L.J. 1099, 1126 (1960). The precise nature of the claim is ordinarily 
identified by examining the damages alleged: when the damages are purely 
economic, the claim sounds in contract, Sw. 
Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 495 
(Tex. 1991); Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 
1986); but a breach of implied warranty claim alleging damages for death or 
personal injury sounds in tort, see Hyundai Motor Co. v. Rodriguez, 995 
S.W.2d 661, 664 (Tex. 1999); William 
Powers, Jr., Texas Products Liability Law § 1.02, at 1-1 (2d ed. 
1994).
            
Apart from the common law’s tendency to equate implied warranty with 
tort, an examination of Chapter 33 as a whole confirms that the Legislature did 
not intend to exclude breach of implied warranty claims from its apportionment 
scheme. See Tex. Gov’t Code § 312.005 (stating 
that courts must look at legislative intent in interpreting a 
statute). Although the 1995 statute does not define the 
term “tort,” its meaning is nevertheless clear from section 33.003, which 
explains how the percentage of responsibility is determined. See id. § 
311.011(a) (noting that words and phrases in a statute must be read in context). 
This section states:
 
The trier of fact, as to each cause of action asserted, 
shall determine the percentage of responsibility, stated in whole numbers, for 
the following persons with respect to each person’s causing or contributing to 
cause in any way the harm for which recovery of damages is sought, whether by 
negligent act or omission, by any defective or unreasonably dangerous product, 
by other conduct or activity that violates an applicable legal standard, or by 
any combination of these . . . .
 
 
See Act 
of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 
Tex. Gen. Laws 971, 972 (codified as amended at Tex. Civ. Prac. & Rem. Code § 
33.003 (1995)) (emphasis added). This language is quite similar to the 1987 
statute’s reference to negligence, products liability, and breach of implied 
warranty resulting in personal injury, death, or property damage. See Act 
of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.03, 
1987 Tex. Gen. Laws 37, 40 (codified as amended at Tex. Civ. Prac. & Rem. 
Code § 33.001(b) 
(1987)). The language “other conduct or activity that 
violates an applicable legal standard” is different but clearly broad enough to 
include the breach of an implied warranty under UCC article 2. Reading the 
statute as a whole, section 33.003 reveals that a “cause of action based on 
tort” includes negligence, products liability, and any other conduct that 
violates an applicable legal standard, such as the tort aspect of an implied 
warranty. And, if Chapter 33 applies to product liability claims, as it clearly 
does, it also follows that this chapter applies to implied warranties because a 
claim for implied warranty is one basis for a products liability action. 
See Tex. Civ. Prac. & Rem. 
Code § 82.001(2) (providing that a products liability claim for personal 
injury, death, or property damage is based in strict tort liability, negligence, 
misrepresentation, and breach of express or implied warranty).
            
Additionally, the chapter’s definition of “toxic tort,” as amended in 
1995, indicates that the Legislature did not intend to exclude implied warranty 
claims. See Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 973 (codified as 
amended at Tex. Civ. Prac. & Rem. Code § 33.011(7) 
(1995)), repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.10(3), 2003 Tex. Gen. Laws 847, 
859. The 1995 version of Chapter 33 provided for joint and 
several liability for any cause of action if “the 
claimant’s personal injury, property damage, death, or other harm resulted from 
toxic tort.” See Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 973 (codified as 
amended at Tex. Civ. Prac. & Rem. 
Code § 33.011(7) (1995)) (emphasis added). Because “toxic tort” was 
defined to include a cause of action “for breach of implied warranty under 
Chapter 2 [of the] Business & Commerce Code,” it is apparent that the 
Legislature did not intend to exclude implied warranty claims from Chapter 33 
when it amended the chapter in 1995. See id.
            
            
            
            
            
            
            
            
           B
            
Garza also contends that Chapter 33 should not apply to her implied 
warranty claim under article 2 of the Texas UCC because Chapter 33 is 
incompatible with the integrated nature and purpose of article 2. The court of 
appeals agreed, concluding that because of article 2’s “complete, integrated 
legal framework governing sales, . . . any extension of 
chapter 33’s proportionate responsibility scheme could potentially disrupt and 
override ‘the UCC’s express purpose of furthering 
uniformity among the states.’” 176 S.W.3d at 633 (quoting 
Sw. Bank, 149 S.W.3d at 
110-11.
            
In Southwest Bank, a case involving negotiable instruments under 
UCC article 3, we considered whether a defendant in a UCC-based conversion 
action[5] could join a responsible third party as 
authorized by Chapter 33. 149 S.W.3d at 105. We 
declined to apply Chapter 33 to the conversion claims, concluding that article 3 
contained “its own loss allocation scheme uniquely applicable to conversion 
claims involving negotiable instruments.” Id. at 111; see Tex. Bus. & Com. 
Code § 3.406 cmt.4 (noting that section 
3.406(b) of the UCC “. . . adopts a concept of comparative 
negligence”). To do otherwise, we said, would likely 
“disrupt the UCC’s carefully allocated liability 
scheme” under article 3. Sw. Bank, 149 S.W.3d at 108.
            
Unlike UCC article 3, article 2 does not undertake a comprehensive fault 
scheme. As applied here, article 2 merely provides that a party may recover 
consequential damages for “injury to person or property proximately resulting 
from any breach of warranty.” Tex. Bus. 
& Comm. Code § 2.715(b)(2). Although a UCC 
comment indicates that the buyer’s conduct may affect the recovery of 
consequential damages under an implied warranty cause of action,[6] article 2 does not apportion liability 
under these circumstances. See id. § 2.715 cmt.5 (noting that “the 
question of ‘proximate’ cause turns on whether it was reasonable for the buyer 
to use the goods without such inspection as would have revealed the defects”). 
Thus, this Court, and many others,[7] have 
historically included breach of implied warranty claims as part of the mix when 
comparing fault in tort-based litigation. See Duncan v. Cessna 
Aircraft Co., 665 S.W.2d 414, 428 (Tex. 1984) (allowing “comparison of 
plaintiff’s conduct . . . with the conduct or product of a defendant, 
[regardless of] whether the suit combine[d] crashworthiness or other theories of 
strict products liability, breach of warranty, or negligence”); see 
also Signal Oil & Gas Co. v. Universal Oil Prods., 572 S.W.2d 320, 329 
(Tex. 1978) (finding that where both the unsuitable product and the buyer’s 
negligence are found to be proximate causes of the damage in an implied warranty 
claim, “the buyer may not recover consequential damages to the extent that the 
buyer’s negligence or fault was a concurring proximate cause of such 
damages”).
 
III
            
Having concluded that Chapter 33 continued to apply to implied warranty 
claims after the 1995 amendments, we apply its proportionate responsibility 
scheme to the jury’s verdict in this case. Chapter 33 provides that “a claimant 
may not recover damages if his percentage of responsibility is greater than 50 
percent.” See Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971 (codified as 
amended at Tex. Civ. Prac. & Rem. Code § 33.001 
(1995)). When the claim involves death, as here, “claimant” 
is defined to include not only the party seeking damages, but also the decedent. 
Id. § 
33.011(1). Because the jury found the decedent, Montez, negligent and apportioned him sixty percent of the 
responsibility for his death, his contributory negligence bars recovery in this 
case. Id. § 
33.001.
* 
* *
            
The court of appeals’ judgment is accordingly reversed, and judgment is 
rendered that claimants take nothing.
 
            
____________________________________
            
David M. Medina
            
Justice
 
Opinion 
delivered:         June 27, 2008







[1] 
Article 2 of the Uniform Commercial Code is codified as part of the Texas 
Business and Commerce Code. See Tex. Bus. & Comm. 
Code §§ 
2.101-.725.

[2] 
The mother of Montez’s son also joined the litigation 
individually and as next friend of their minor child.

[3] 
The 1995 version of Chapter 33 applies to all causes of action that accrued on 
or after September 1, 1996, see Act of May 8, 1995, 74th Leg., R.S., 
ch. 136, § 3, 1995 Tex. Gen. Laws 971,976, but the 
2003 version governs all cases filed on or after July 1, 2003, see Act of 
June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(c), 
2003 Tex. Gen. Laws 847, 899.

[4] 
Following the passage of the 1987 version of Chapter 33, section 33.001 read in 
pertinent part as follows:
 
                
    (a) In an action to recover damages for negligence 
resulting in personal injury, property damage, or death or an action for 
products liability grounded in negligence, a claimant may recover damages only 
if his percentage of responsibility is less than or equal to 50 
percent.
 
                
    (b) In an action to recover damages for personal 
injury, property damages, or death in which at least one defendant is found 
liable on a basis of strict tort liability, strict products liability, or 
breach of warranty under chapter 2, Business & Commerce Code, a 
claimant may recover damages only if his percentage of responsibility is less 
than 60 percent.
Act of June 3, 1987, 70th Leg., 1st 
C.S., ch. 2, § 2.04 (codified as amended in Tex. Civ. Prac. & Rem. 
Code § 33.001(a)-(b) (1987)) (emphasis 
added).

[5] 
In Southwest Bank, we assumed, without deciding, that a UCC conversion 
claim was a “tort” under Chapter 33. 149 S.W.3d at 107 
n.6.

[6] 
Comment 5 states:
 
Subsection (2)(b) states the 
usual rule as to breach of warranty, allowing recovery for injuries 
“proximately” resulting from the breach. Where the injury involved follows the 
use of goods without discovery of the defect causing the damage, the question 
of “proximate” cause turns on whether it was reasonable for the buyer to use the 
goods without such inspection as would have revealed the defects. If it was 
not reasonable for him to do so, or if he did in fact discover the defect prior 
to his use, the injury would not proximately result from the breach of 
warranty.
 
Tex. Bus. & Com. 
Code § 2.715 cmt.5 (emphasis 
added).

[7] 
Morales v. Am. Honda Motor Co., 151 F.3d 500, 517-18 (6th Cir. 1998) 
(interpreting Kentucky law that comparative fault applies to products liability 
actions based on breach of warranty); Merritt Logan, Inc. v. Fleming 
Cos., 901 F.2d 349, 365 (3d Cir. 1990) (construing New Jersey statutes to 
authorize consideration of comparative negligence in assessing damages for 
breach of warranty); Sheldon v. Unit Rig & Equip. Co., 797 F.2d 883, 
887-88 (10th Cir. 1986) (finding that the Wyoming comparative negligence statute 
extends to claims for breach of warranty although the statute merely refers to 
an action “to recover damages for negligence”); Loughridge v. Goodyear Tire & Rubber Co., 207 F. Supp. 
1187, 1191-92 (D. Colo. 2002) (noting that products liability claims brought 
under breach of warranty are subject to comparative fault); West v. 
Caterpillar Tractor, Co., 336 So.2d 80, 92 (Fla. 1976) (interpreting Florida 
application of comparative negligence principles to products liability claims 
under breach of warranty theory); Flom v. 
Stahly, 569 N.W.2d 135, 140-41 (Iowa 1997) 
(interpreting the Iowa comparative fault statute to apply to breach of implied 
warranty claims for personal injury or property damage); Kennedy v. 
Sawyer, 618 P.2d 788, 798 (Kan. 1980) (stating that the doctrine of 
comparative fault or causation applies to implied warranty claims in products 
liability cases); In re Certified Questions, 331 N.W.2d 456, 461 (Mich. 
1982) (applying Michigan pure comparative negligence statute to breach of 
warranty); Lesmeister v. Dilly, 330 
N.W.2d 95, 101 (Minn. 1983) (stating the Minnesota comparative fault statute 
expressly includes breach of warranty claims); Champagne v. United 
States, 513 N.W.2d 75, 79 (N.D. 1994) (indicating that the North Dakota 
comparative fault statute extends to breach of warranty claims for product 
defect); Fiske v. MacGregor, 464 A.2d 719, 727 (R.I. 1983) (holding that 
the Rhode Island comparative negligence statute extends to breach of implied 
warranty actions); Owens v. Truckstops of Am., 
Inc. 915 S.W.2d 420, 434 (Tenn. 1996) (noting that the Tennessee comparative 
fault scheme should also apply to breach of implied warranties); Jacobsen 
Constr. Co. v. Structo-Lite 
Eng’g, Inc., 619 P.2d 306, 312 (Utah 1980) 
(maintaining that the Utah comparative negligence principle is a valid defense 
to breach of warranty actions).